# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARGARET SHERMAN, and<br>RICHARD SHERMAN,<br><br>    Plaintiffs,<br><br>v.<br><br>SUNSONG AMERICA, Inc., SHIU<br>FUNG FIREWORKS, Co., LTD.,<br>WINCO FIREWORKS, Inc., WINCO<br>FIREWORKS INTERNATIONAL, LLC.,<br>SHANGLI JIN XIN EXPORT<br>FIREWORKS FACTORY, and<br>WILLIAM LU,<br><br>    Defendants. | CASE NO. 8:04CV300<br><br><br><br><br>MEMORANDUM<br>AND ORDER |

    The immediate matter before the Court is the Defendants'—Winco Fireworks, Inc. and Winco Fireworks International, LLC (collectively referred to as "Winco"), and Shiu Fung Fireworks Co. Ltd. ("Shiu Fung")—Joint Motion for Leave to File and Serve Amended Answers to Second Amended Complaint (Filing No. 261).[1] For the reasons set forth below, the motion will be granted, and the Defendants Winco and Shiu Fung will be ordered to file their respective proposed amended answers as separate filings for clarity in the record. Further, although the Court is well aware of the extensive briefing that has already taken place in connection with the Defendants' motion for summary judgment, the Plaintiffs will be granted leave until and including February 16, 2007, to file any supplementary brief and/or index of evidence related to the preemption issue. In the alternative, on or before February 16, 2007, the Plaintiffs may seek leave to conduct additional discovery on the

---

[1] Although I realize the Defendants' full reply time has not yet expired, considering the proximity of trial, I see no need for further delay addressing the issues discussed in this Memorandum and Order.

issue of preemption, if necessary; an extension of time to file a supplementary brief and/or index of evidence related to the preemption issue; and a continuance of the trial for good cause shown. The Defendants will not be granted leave to respond to any supplementary brief filed by the Plaintiffs, nor leave to conduct additional discovery, nor leave to request a new trial date. Finally, due to the belated filing of Winco and Shiu Fung's motion for leave to amend their answers to raise the affirmative defense of preemption, this Court will entertain a request from the Plaintiffs for attorney's fees and costs reasonably incurred by the Plaintiffs in preparing to address issues that are no longer relevant following the filing of the amended answers, as well as those reasonably incurred in preparing any supplementary brief and/or index of evidence addressing the issue of preemption.

### Choice of Law and Preemption

Nebraska is the forum state and the state in which the events giving rise to the cause of action occurred; accordingly, this Court would be inclined to apply the substantive law of the State of Nebraska. *See, e.g.*, *Zutz v. Case Corp.*, 422 F.3d 764, 769 (8th Cir. 2005) (applying law of forum state in diversity negligence action) (citing *Jordan v. NUCOR Corp.*, 295 F.3d 828, 834 (8th Cir. 2002)). However, the parties do not all agree that Nebraska law governs the disposition of many of the issues of this diversity action; rather, the Defendants Winco and Shiu Fung argue that many of the Plaintiffs' claims are preempted by federal law, specifically the Federal Hazardous Substances Act ("FHSA") and the Consumer Product Safety Act ("CPSA").

**A. The Parties' Positions**

The Defendants rely heavily on *Moe v. MTD Prods., Inc.*, 73 F.3d 179 (8th Cir. 1995), to support their preemption arguments. The plaintiff in *Moe* lost several fingers when he reached into the grass chute of his lawnmower, and brought, among other claims, a failure-to-warn claim against the manufacturer, alleging that the warning label for the lawnmower was inadequate because it failed to warn consumers that the blade brake/clutch system cable might fray. The *Moe* court first noted that "[t]he [CPSA] preempts not only positive enactments of state standards, but also common law tort actions that would have the effect of creating a state standard." *Id*. at 182. The court then cited to the Safety Standard for Walk-Behind Power Lawn Mowers (the "Mower Standard"), a federal safety standard for lawnmowers promulgated through the CPSA. The court found that "in addition to setting out performance requirements for mowers, the Mower Standard requires that a warning label be placed on each mower's blade housing. The label must contain both a written warning against blade contact injury and a depiction of a blade slicing into a hand." *Id*. In finding that a failure-to-warn cause of action was preempted, the court stated that "[t]he risk of injury contemplated by such a warning is the same as that addressed by the labeling requirements in the Mower Standard—injury to the hands by the cutting blade. If the [plaintiffs'] failure to warn claim were successful, it would create a state standard requiring additional warnings on lawn mowers or in owner manuals related to the same risk of injury addressed by the federal standard. This claim is thus expressly preempted by the CPSA." *Id*.

3

Conversely, the Plaintiffs argue in their brief in opposition to the joint motion to amend answers (Filing No. 282), that even if I were to allow the amended answers, their state-law tort claims would not be preempted pursuant to the CPSA's savings clause. Plaintiffs rely on *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000). *Geier* concerned a suit brought against a car manufacturer for, among other claims, negligence in not equipping the plaintiff's car with a driver's side air-bag. The Court, noting that the CPSA had a savings clause that stated "'[c]ompliance with' a federal safety standard 'does not exempt any person from any liability under common law,'" *id.* at 868 (quoting 15 U.S.C. § 1397(k)), found that "[t]he saving clause assumes that there are some significant number of common-law liability cases to save. And a reading of the express pre-emption provision that excludes common-law tort actions gives actual meaning to the saving clause's literal language, while leaving adequate room for state tort law to operate—for example, where federal law creates only a floor, *i.e.*, a minimum safety standard," *id.* "[T]he saving clause at least removes [common law state] tort actions from the scope of the express pre-emption clause." *Id.* at 869.

However, as the Eighth Circuit later noted in *Harris v. Great Dane Trailers, Inc.*, 234 F.3d 398 (8th Cir. 2000), "the [*Geier*] Court went on to hold that plaintiffs' claim in *Geier* was conflict-preempted by FMVSS 208, the Safety Act's standard dealing with airbags and other passive restraint systems." *Id.* at 399. *See also Geier*, 529 U.S. at 869 ("We recognize that, when this Court previously considered the pre-emptive effect of the statute's language, it appeared to leave open the question of how, or the extent to which, the saving clause saves state-law tort actions *that conflict with federal regulations*

4

*promulgated under the Act.* We now conclude that the saving clause (like the express pre-emption provision) does not bar the ordinary working of conflict pre-emption principles." (emphasis added) (citation omitted)).

The *Moe* court ruled on two causes of action—a failure-to-warn claim and a defective design claim. The failure-to-warn claim was found to be preempted by the federal statute, because, considering the Mower Standard, the court found "the savings clause should not be interpreted to subvert the preemption provision and should be read to save those claims that are not expressly preempted." *Moe*, 73 F.3d 183. This finding seems in line with the later Supreme Court decision in *Geier*.

The defective design claim in *Moe*, however, was found to be "an example of the type of claim the savings clause preserves . . . . A successful tort action based on the defective design of an installed BBC would not create a different standard for mower safety or impose additional requirements on the manufacturer. Instead it would create an incentive for manufacturers to install a BBC that works and is properly designed, and thus ensure that the federal standard has meaning. The Moes' defective design claim is not preempted by the CPSA and should not have been dismissed on that ground." *Id*.

## B. The Belatedness Issue

Winco and Shui Fung raised the issue of preemption for the first time in their joint brief in support of their joint motion for summary judgment. (Filing No. 205). The Plaintiffs, in their brief in opposition to summary judgment, argue that preemption is an affirmative defense which was, according to Rule 8(c) of the Federal Rules of Civil Procedure, not appropriately pled, and failure to raise it in accordance with Rule 8(c) precludes Winco and

Shiu Fung from being able to raise it now. After the Plaintiffs filed their brief in opposition, Winco and Shui Fung filed a joint motion asking this Court for leave to file amended answers[2] to the Plaintiffs' Second Amended Complaint, and the Plaintiffs filed a brief and index of evidence in opposition. (Filing Nos. 282–83). Consequently, I need to address (i) whether the federal regulations cited by the Defendants, if applicable, can indeed be waived, and (ii) whether the Plaintiffs are sufficiently prejudiced such that I should deny the motion for leave to amend.

### *1. Can Federal Preemption be Waived ?*

It is established law of this circuit that "[p]reemption is an affirmative defense." *Jordan v. Clayton Brokerage Co. of St. Louis, Inc.*, 975 F.2d 539, 541, (8th Cir. 1992) (citing *First Nat'l Bank of Aberdeen v. Aberdeen Nat'l Bank*, 627 F.2d 843, 851 (8th Cir.1980); Fed. R. Civ. Pro. 8(c)). "As with other affirmative defenses, failure to plead [the affirmative defense] as an affirmative defense results in a waiver of that defense and its exclusion from the case." *Sayre v. Musicland Group, Inc., a Subsidiary of Am. Can Co.*, 850 F.2d 350, 354 (8th Cir. 1988). *See also Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983) ("Federal Rule of Civil Procedure 8(c) requires *any* matter constituting

---

[2] Winco's Answer to the Second Amended Complaint (Filing No. 145) contains no explicit reference to federal standards; it does, however, contain nonspecific denials to allegations of liability asserted by the Plaintiffs' Second Amended Complaint paragraphs containing the second though seventh causes of action. Winco's proposed Amended Answer to the Second Amended Complaint (Filing No. 261-3) contains one additional paragraph (¶ 33) which seeks to allege "the Second through the Seventh Causes of Action of the Plaintiffs' Second Amended Complaint are barred by application of the federal preemption doctrine." (Filing No. 261-3, ¶ 33). The additions to Shiu Fung's Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint (Filing No. 146) found in their proposed Amended Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint (Filing No. 261-4) are similar to Winco's, in that one additional paragraph (¶ 63) seeks to allege "Plaintiffs' Second through Seventh Causes of Action are barred by application of the federal preemption doctrine." (Filing No. 261-4, ¶ 63).

an affirmative defense to be set forth in a defendant's responsive pleading. Failure to follow this rule generally results in a waiver." (emphasis added)).

Nevertheless, federal preemption is somewhat unlike those affirmative defenses specifically enumerated in Rule 8(c). Indeed, it would seem peculiar that failure to assert the existence of a federal regulation—especially one where Congress's explicit intention was to supplant and make uniform the several states' laws—could dictate this Court's application of the federal regulation. "[W]hen federal preemption is found, the legal effect is clear. Federal preemption replaces the tort law of all states with a uniform body of federal law regulating the relevant area of product safety." Restatement (Third) of Torts: Prod. Liab. § 7 cmt. e.

However, preemption under a limited Congressional preemption regulation, such as the FHSA, does not foreclose the possibility of state-law tort claims. Rather, as was noted in the Fourth Circuit, "in an area of *limited Congressional preemption* such as the FHSA, a common law tort action based upon failure to warn may only be brought for non-compliance with existing federal labeling requirements. In [such actions], if the plaintiff requests a label that is 'more elaborate or different' than the one required by the FHSA and its regulations, the claim is preempted." *Moss v. Parks Corp.*, 985 F.2d 736, 740 (4th Cir. 1993) (emphasis added). *See also Mattis v. Carlon Elec. Prods.*, 295 F.3d 856, 862 (8th Cir. 2002) ("As enacted, the FHSA did not mention federal preemption, but the 1966 Amendments to the Act added a provision to preempt any state cause of action that seeks to impose a labeling requirement different from the requirements in the FHSA or the regulations promulgated thereunder. . . . [However,] our circuit has held that 'when a statute only preempts state requirements that are different from or in addition to those

7

imposed by federal law, plaintiffs may still recover under state tort law when defendants fail to comply with the federal requirements.'" (quoting *Nat'l Bank of Commerce of El Dorado v. Kimberly-Clark Corp.*, 38 F.3d 988, 993 (8th Cir.1994))). Consequently, in areas of limited Congressional preemption, it has been found that "it is wiser to view the preemption doctrine as being analogous to a choice-of-law principle. That is, preemption analysis simply tells the court what law, state or federal, should be referred to in order to determine the plaintiff's right to relief in a given case." *Billy Jack for Her, Inc. v. N.Y. Coat, Suit, Dress, Rainwear & Allied Workers' Union*, 511 F. Supp. 1180, 1187 (S.D.N.Y. 1981). *See also Piekarski v. Home Owners Sav. Bank, F.S.B.*, 956 F.2d 1484, 1488–89 (8th Cir. 1992) (stating that, in a case where the appellants attempted to assert that federal law preempts state law, the "preemption argument involves a choice of law—does federal regulatory law or [] state law govern the [issues]. Where preemption involves a choice of law, rather than a choice of forum, it is an affirmative defense. . . . Appellants thus waived this defense.").

In the Eighth Circuit, "[w]hen an affirmative defense 'is raised in the trial court in a manner that does not result in unfair surprise, . . . technical failure to comply with Rule 8(c) is not fatal.'" *Fin. Timing Publ'ns, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 944 n.9 (8th Cir. 1990) (quoting *Allied Chem. Corp.*, 695 F.2d at 855).[3]  "Pursuant to Federal Rule of

---

[3]Although the court in *Fin. Timing Publ'ns* did find a mere "technical failure," and consequently allowed the use of the affirmative defense at issue, the facts of that case are distinguishable from the facts of the case at hand. In *Fin. Timing Publ'ns,* "the answer alleged that the complaint was barred by the 'applicable statute of limitations,' [but] the plaintiff contends that because the answer did not specifically refer to the contractual limitations provision, Compugraphic cannot rely on this provision for its defense. [This court] disagree[s]. . . . Compugraphic explicitly informed Financial Timing on two occasions that it would seek to dismiss the action on the grounds that all claims were barred by the one-year contractual period of limitations: first, in Compugraphic's

Civil Procedure 8(c), an affirmative defense must be set forth in the responsive pleading to give the opposing party notice and a chance to 'develop evidence and offer arguments to controvert the defense. . . .' The court may nonetheless allow the affirmative defense to be pleaded at the summary judgment stage upon a finding that the delay would not prejudice the nonmoving party." *Geelan v. Mark Travel, Inc.*, 2006 WL 3610804, at *5 (D. Minn. Dec. 11, 2006) (citations omitted).[4]

### 2. Application of Law to the Facts of this Case

Winco and Shiu Fung state that "[t]hrough discovery, specifically at the time of the deposition of Robert Mitchell Hale on *May 16, 2006*, it first came to the attention of the parties that the product at issue in this litigation was subject to regulations of the Consumer Product Safety Commission (CPSC)." (Filing No. 261, ¶ 4) (emphasis added). However, Winco and Shiu Fung did not evince explicit intent to plead preemption until they filed their

---

response to Financial Timing's first set of interrogatories served on November 12, 1987; and second, in Compugraphic's memorandum in support of its motion for summary judgment on September 15, 1988. These notices were sufficient to avoid unfair surprise." *Fin. Timing Publ'ns*, 893 F.2d at 944 n.9.

In this case, there is no such explicit averment in the Answer to the Second Amended Complaint, nor is there any indication set forth in any other filing with the Court until the joint motion for summary judgment. Rather, Winco and Shiu Fung state that the "Plaintiffs have been aware of the applicability of the CPSC from the materials reviewed by their own expert witness, which was referred to and relied upon in formulation of her opinions, clearly demonstrating that plaintiffs' knew and understood that federal law regulated this area and were aware of the possibility that state law could be pre-empted by the federal statutes." (Filing No. 261-2, p. 3).

[4] The court in *Geelan*, although acknowledging its ability to permit the use of the belated affirmative defense, refused to find no prejudice to allow the violation of Rule 8(c), stating "[g]iven the length of time defendant proceeded in this litigation without raising the defense and the fact that discovery has been completed, the court finds that allowing defendant to assert the defense at this stage in the proceeding would prejudice plaintiffs. Therefore, defendant's motion for summary judgment based on the affirmative defense of unforeseeable business circumstances is denied." *Geelan*, 2006 WL 3610804, at *5.

9

motion for summary judgment on December 15, 2006, and did not move for leave to amend their answers until January 22, 2007. The Plaintiffs argue that, since preemption was raised "for the first time . . . two and a half years after this case was filed[], after all of the depositions were completed, after discovery was closed, after expert designations were completed, and 20 months after the deadline for amending pleadings had passed," (Filing No. 246, p. 35), they are unfairly prejudiced, and the preemption defense should be deemed waived.

The Plaintiffs' argument is well-taken. Winco and Shui Fung proceeded until December 15, 2006, without raising the defense, despite admitting awareness of the possibility of the affirmative defense at least as early as May 16, 2006. Further, at the time Winco and Shui Fung filed their joint motion for summary judgment raising the affirmative defense, discovery had been completed, and approximately three months remained before trial.

Nevertheless, I am not persuaded that the Defendants have waived their preemption defense. It is within my discretion to allow an amended pleading at this stage in the litigation, and I will allow such an amendment in the interests of justice. I recognize, however, that the Plaintiffs likely have invested considerable time and effort preparing to litigate issues that may no longer be relevant. The Defendants' Joint Motion to Amend Answers to Second Amended Complaint will be granted, but due to the unwarranted and somewhat prejudicial delay, the Defendants may be required to compensate the Plaintiffs

for attorneys fees and costs expended due to the Defendants' untimely motion to amend their Answers to raise the affirmative defense of preemption.[5]

  I invite the Plaintiffs to address the following matters in any supplementary brief: (i) according to the aforementioned case law (specifically *Moe* and *Harris*), is the third cause of action, the negligent failure-to-warn claim (based on the firework's label), completely preempted, such that summary judgment should be granted in favor of the Defendants on that issue; and (ii) according to the above analysis, are the other state-law claims—although not completely preempted (in that the Plaintiffs would be allowed to maintain these other state-law causes of action)—subject to the applicable federal regulations where they exist, such that those federal regulations would set the standard of care, and state law (common or statutory) could not set a higher standard of care?

---

[5]Recent case law from the United States District Court of the District of Minnesota supports the above analysis. In *Vosdingh v. Qwest Dex, Inc.*, 2005 WL 914732 (D. Minn. Apr. 21, 2005), *vacated in part by reconsideration on other grounds*, *Vosdingh v. Qwest Dex, Inc.*, 2005 WL 1323007 (D. Minn. June 2, 2005), a court in the District of Minnesota was faced with a very similar situation to the case at hand. In that case, the plaintiffs sought relief under the Minnesota Parenting Leave Act ("MPLA"), a state statute. The defendants, in their opposition to the plaintiffs' motion for summary judgment, argued that the MPLA cause of action was preempted by § 301 of the Labor Management Relations Act ("LMRA"). The district court found that the defendants had "waived any argument that [p]laintiffs' claims are preempted under § 301 of the LMRA by failing to raise the affirmative defense in a timely manner. As § 301 of the LMRA dictates only the law to be applied rather than the forum in which a claim is litigated, it is well established that § 301 preemption may be waived and that 'parties do not have an absolute right to raise that argument at any stage they wish in the proceedings.'" *Id*. at *10 (quoting *Sweeney v. Westavco Co.*, 926 F.2d 29, 39–40 (1st Cir. 1991) (Breyer, J.)).
  I note that in *Vosdingh*, the district court ruled that since the defendants did not raise the affirmative defense of preemption under the LMRA until their defense of a summary judgment motion, two months after the close of discovery, and more than one year after the amended complaint had been filed, it would not allow the defendants to amend their answer. *Id*.

IT IS ORDERED:

1. The Joint Motion of Defendants Shiu Fung Fireworks Co. Ltd., Winco Fireworks, Inc. and Winco Fireworks International, LLC, for Leave to File and Serve Amended Answers to Second Amended Complaint (Filing No. 261) is granted;

2. The Defendants shall re-file their respective Amended Answers to the Second Amended Complaint as separate filings in the record; and

3. The Plaintiffs are granted leave to:

    a. file on or before February 16, 2007, a supplementary brief and/or index of evidence in opposition to the Defendants' motion for summary judgment, addressing preemption issues in light of this Memorandum and Order, or, in the alternative, file on or before February 16, 2007, a motion seeking leave to conduct additional discovery related to the preemption issue, an extension of time to file a supplementary brief and/or index of evidence, and/or a continuance of trial; and

    b. file a request for attorney's fees and costs reasonably incurred as a result of the Defendants' untimely filing of Amended Answers raising the affirmative defense of preemption.

DATED this 8th day of February, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge