## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARGARET SHERMAN, and RICHARD SHERMAN, | ) ) ) | CASE NO. 8:04CV300 |
| Plaintiffs, | ) ) | |
| v. | ) ) | MEMORANDUM AND ORDER |
| SUNSONG AMERICA, Inc., SHIU FUNG FIREWORKS, Co., LTD., WINCO FIREWORKS, Inc., WINCO FIREWORKS INTERNATIONAL, LLC, SHANGLI JIN XIN EXPORT FIREWORKS FACTORY, and WILLIAM LU, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Margaret Sherman and Richard Sherman (collectively referred to as the "Plaintiffs") have filed suit with this Court, bringing nine separate causes of action[1] against, among other defendants, Shangli Jin Xin Export Fireworks Factory ("Shangli"); Winco Fireworks, Inc. and Winco Fireworks International, LLC (collectively referred to as "Winco"); and Shiu Fung Fireworks Co. Ltd. ("Shiu Fung").[2] (Filing No. 140). The Plaintiffs allege that on July 3, 2002, while they were watching a fireworks display in the backyard of Mrs. Sherman's daughter, one of the fireworks malfunctioned and flew directly into Mrs. Sherman's eye, causing permanent damage. (Filing No. 246, p. 4).

---

[1]The Plaintiffs' sixth cause of action—violation of the Magnuson Moss Act—has been abandoned by the Plaintiffs (Filing No. 246, p. 66), will accordingly be dismissed as to all Defendants, and, consequently, needs no further discussion by this Court.

[2]The Plaintiffs' Second Amended Complaint asserts claims against Shangli, Shiu Fung, Winco, Sunsong America, and William Lu individually and doing business as China Sunsong Fireworks Manufacturing Company. However, the only defendant parties at issue in the pending motions are those mentioned in the body of this Memorandum and Order. Sunsong America failed to plead or otherwise defend in the action, and an entry of default was made against it. (Filing No. 164).

The matters currently before the Court are: (I) the Joint Motion for Summary Judgment by Defendants Winco and Shiu Fung (Filing No. 204); (ii) the Motion for Summary Judgment by Defendant Shangli (Filing No. 223); (iii) the Objection to Index by Defendants Winco and Shiu Fung (Filing No. 267); (iv) the Objection to Index by Defendant Shangli (Filing No. 268); (v) the Motion to Strike Affidavits of Michael Collar and Ralph Apel by the Plaintiffs (Filing No. 269); and (vi) the Motion for Extension of Time to File Application for Attorneys Fees and Costs by the Plaintiffs (Filing No. 298).[3]  For the reasons set forth below, Filing No. 204 will be granted in part and denied in part; Filing No. 223 will be granted;[4]  Filing No. 267 will be granted in part and denied in part; Filing No. 268 will be granted; Filing No. 269 will be denied; and Filing No. 298 will be granted.

## Evidentiary Rulings

The parties contest the admissibility of some of the evidence offered in connection with the motions for summary judgment (Filing Nos. 267, 268, 269).  As an initial matter, I will address these objections.  Defendants Winco and Shiu Fung have filed objections (Filing No. 267) challenging the authentication and foundation for certain exhibits attached to the Cooper (Filing No. 237) and Coyle (Filing No. 260) Affidavits.  I find that the copies of Cooper Affidavit Exhibit 12R and Coyle Affidavit Exhibits 13(A–C), which appear to be

---

[3]There are also three motions in limine appearing at Filing Nos. 252, 258, and 289, and a motion to amend the pretrial order at Filing No. 299.  Those motions will be addressed in a different Order, at a later date.

[4]Shangli submits its arguments to support, not only its application for summary judgment, but, "in the alternative, dismissal of plaintiffs' second amended complaint pursuant to Rule 12(b)(2)."  (Filing No. 214, p. 5).  Shangli has previously filed a motion to dismiss claiming a lack of personal jurisdiction (Filing No. 80), but this Court ruled that "Shangli (or Shangli/Sunsong) has the requisite minimum contacts with Nebraska for the Court to exercise jurisdiction over Shangli." (Filing No. 151, p. 12).  Because I have already resolved the issue, I will not discuss any further arguments concerning this Court's personal jurisdiction over Shangli.

court documents, have not been certified by the custodian of records or otherwise authenticated. "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [a] copy of an official record . . . or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, . . . certified as correct by the custodian or other person authorized to make the certification. . . ." Fed. R. Evid. 902(4); *United States v. Darveaux*, 830 F.2d 124, 126 (8th Cir. 1987). Accordingly, the objections to those documents will be sustained for purposes of the summary judgment motions. In addition, I find that there is insufficient foundation for Cooper Affidavit Exhibit 12G and Coyle Affidavit Exhibit 13E, and the objections to those exhibits will be sustained.

Because printed materials purporting to be periodicals are self-authenticating under Rule 902(6), Cooper Affidavit Exhibit 12F is admissible. The official publications that are identified as Cooper Affidavit Exhibits 12N and 12Y, are self authenticating, and the objections to those documents are overruled. Fed. R. Evid. 902(5).

Defendant Shangli has objected (Filing No. 268) to the Plaintiffs' reliance on Exhibit A to the affidavit of Cara LaForge. The LaForge Affidavit can be found within the index of evidence submitted by Shangli (Filing No. 221, Exhibit F), but has not been presented to the Court by Shangli as reliable evidence, as argued by the Plaintiffs. Rather, Shangli argues that the LaForge Affidavit, relied upon by the Plaintiffs in connection with earlier motions, is inadmissible because it is not based on personal knowledge and the exhibit to the affidavit presents at least two levels of hearsay.

I conclude that the affidavit does not lay proper foundation for the attached report. LaForge states that she is employed by Legal Language Services, in the International

Litigation Support Services Department.  In that position, she is "in charge of" those persons who conducted the research upon which the report, which is marked Exhibit A, is based.  She states that pursuant to a request of the Plaintiffs' counsel, her company conducted an investigation, and the report contains the results of that investigation. LaForge fails, however, to confirm that the report is a compilation of data made at or near the time of the investigation by a person with knowledge of the investigation and that such reports are kept in the regular course of Legal Language Services' business activity. Further, as Shangli argues, the report contains hearsay upon hearsay, and is consequently not admissible evidence.  For these reasons, I will sustain Shangli's motion.

The Plaintiffs have filed a Notice of Objection to and Motion to Strike the affidavits of Michael Collar and Ralph Apel. (Filing No. 269).   The Plaintiffs argue that Collar and Apel make statements in the affidavits that are contradicted by statements made in Defendants' other discovery materials.  The objections raised go to the affiants' credibility and the weight the affidavits should be accorded.  The issues raised by the contradictions in the evidence may be explored on cross-examination, but they do not present a basis for striking the affidavits themselves.   For these reasons, the objection is overruled and the motion to strike will be denied.

## Facts

### A. Uncontroverted Facts

The parties have submitted briefs in support of and in opposition to the motions for summary judgment, in compliance with NECivR 56.1.  The following facts are those stated in the Defendants' briefs (Filing Nos. 205, 214), supported with pinpoint citations to the

4

Defendants' indices of evidence, and specifically acknowledged to be true in the Plaintiffs' brief (Filing No. 246).

The Plaintiffs Margaret Sherman and Richard Sherman are husband and wife, and are residents of Omaha, Nebraska. (Filing No. 205, p. 4 ¶ 1; Filing No. 246, app. 1 ¶ 1). Shangli is a business entity located within China. (Filing No. 214, p. 2 ¶ 2; Filing No. 246, app. 2 ¶ 2). Shiu Fung is a company with its principal place of business in Kowloon, Hong Kong. (Filing No. 205, p. 4 ¶ 2; Filing No. 246, app. 1 ¶ 2). The Winco Defendants are related entities and have a principal place of business in Prairie Village, Kansas. (Filing No. 205, p. 4 ¶ 3; Filing No. 246, app. 1 ¶ 3).

During the summer of 2002, prior to July 3, Mrs. Sherman's son-in-law, Stan Kapustka, purchased fireworks in Nixa, Missouri, including approximately two loose individual products known as "Saturn Missiles with Crackers," for use at a family event at his home. (Filing No. 205, p. 5 ¶ 7; Filing No. 246, app. 1 ¶ 7; Filing No. 214, p. 2 ¶ 4; Filing No. 246, app. 2 ¶ 4). On July 3, 2002, Mrs. Sherman was in the backyard of her daughter and son-in-law, observing fireworks. Mrs. Sherman's grandson, Nate, ignited a firework (the "Product"), that struck Mrs. Sherman, injuring her eye. (Filing No. 205, p. 5 ¶¶ 5–6; Filing No. 246, app. 1 ¶¶ 5–6).

Hale Fireworks, LLC, is a wholesaler and retailer of fireworks. (Filing No. 205, p. 4 ¶ 4; Filing No. 246, app. 1 ¶ 4). Hale was contractually required to purchase all of its fireworks from Winco since 2001. When Winco placed orders with Shiu Fung for fireworks for Hale, approximately 90% of the fireworks were shipped directly from the manufacturer to Hale. Winco does not receive or view such fireworks in any way prior to shipment to Hale. Further, Shiu Fung does not open any containers of non-"Black Cat" or "Zebra"

5

products to view the fireworks prior to their shipment to Hale.  No one from Winco or Shiu Fung was present when Hale received or inventoried the fireworks.  (Filing No. 205, p. 11–12 ¶ 29; Filing No. 246, app. 1 ¶ 29).  For the years 2000, 2001, and 2002, Winco received about 70% of its fireworks from Shiu Fung and the remaining 30% from other entities.  (Filing No. 205, p. 11 ¶ 33; Filing No. 246, app. 1 ¶ 33).

Both Shiu Fung and Winco are members of the American Fireworks Standards Laboratory ("AFSL"), an organization made up of participants in the fireworks industry. (Filing No. 205, p. 12 ¶ 35; Filing No. 246, app. 1 ¶ 35).

## B. Controverted Facts

The Plaintiffs assert the following facts in their brief in opposition to summary judgment (Filing No. 246).

Kapustka bought the Product from Hale in Nixa, Missouri.  Before purchasing the Product, Kapustka read the Product's label, including the following warning:

> SATURN MISSILB WITH CRACKERS.  WAR NING.  Flammable missle with report.  Use only under close adult supervision.  For outdoor use only, place on hard, open surface.  Do not hold in hand. Light fuse and get away.  This missile travels at high speed and can travel long distances.  Misuse may result in injury or fire.

(Filing No. 246, pp. 6–7, ¶¶ 5–11).  Hale obtained the Product from Winco, the exclusive supplier of fireworks for Hale since 2000.  (Filing No. 246, pp. 7–8 ¶¶ 12–17).  Winco, Shiu Fung's biggest customer, processed all of Shiu Fung's sales to Hale, and consequently Winco obtained the Product from Shiu Fung.  (Filing No. 246, pp. 8–9 ¶¶ 18–24).[5]

---

[5]Winco and Shiu Fung claim that "[t]here is no evidence that either Shiu Fung or Winco was in the chain of distribution of the Missile in any capacity."  (Filing No. 205, p. 20).  However, the above mentioned portions of the Plaintiffs' brief are supported with pinpoint citations to the record, which, excluding the evidence I find inadmissible for summary judgment purposes, I find contain

6

Ultimately, Shangli Jin Xin, doing business as China Sunsong, created the Product and Shiu Fung obtained the Product from Shangli Jin Xin.  (Filing No. 246, pp. 9–11 ¶¶ 25–49).

Members of the AFSL, a voluntary organization, dictate the exact specifications for fireworks that AFSL members purchase and accept.  The AFSL tests all fireworks products at the direction of its members using the protocols established by the members of the AFSL and sends a bill for such testing with each container of fireworks.  If a product fails the AFSL test, Winco and Shiu Fung will not accept the product.  Winco and Shiu Fung require that the fireworks they purchase meet the design and performance specifications developed by the AFSL's members, including themselves.  Hale, Winco, and Shiu Fung pay a surcharge for AFSL testing.  Winco and Shiu Fung pass the test surcharge onto their customers, and also provide test results to their customers.  Shangli allows its products to be tested pursuant to the AFSL guidelines.  (Filing No. 246, pp. 12–13 ¶¶ 50–57).

Prior to lighting the Product, Kapustka again read the Product's label, and advised his son Nate of the contents of the label.  Nate followed the instructions on the label of the Product exactly—he placed the Product on a hard, open surface; did not light it in his hand; and lit the fuse and immediately got away from the Product.  After Nate lit the Product, it flew upward for only approximately one foot, and then traveled horizontally toward Mrs. Sherman, striking her in the eye.  (Filing No. 246, pp. 14–15 ¶¶ 64–67).  The incident resulted in the permanent loss of Mrs. Sherman's eye, and replacement with a prosthetic device.  (Filing No. 246, p. 16 ¶ 73).

---

sufficient evidence to create a genuine issue of material fact as to Winco and Shiu Fung's presence in the chain of distribution of the Product.

The Plaintiffs allege the following in support of their claim that the product was defective and unreasonably dangerous. First, the label did not identify that the Product might travel erratically, sideways, or horizontally, which is a risk that is well known to sellers, suppliers, distributors, and manufacturers of fireworks; did not identify how to avoid it if it did travel erratically, sideways, or horizontally; did not identify the manufacturer; and did not give first aid instructions. Second, the Product's design lacked (I) a soft, rounded nose cone (used by other manufacturers); and (ii) an effective guidance mechanism for the initial, low-speed portion of its flight, and that a guide rod (something other manufacturers of fireworks allegedly use) or similar guidance mechanism would have provided the needed stability during its launch. Finally, exemplars which were tested demonstrate that the Product was inadequately tested, and did not meet some of the specifications of the AFSL or Consumer Product Safety Commission ("CPSC"). (Filing No. 246, pp. 16–20 ¶¶ 76–93).

## Jurisdiction

The Plaintiffs, Nebraska residents, have filed suit against, among other defendants, Shangli, Shiu Fung, and Winco, alleging in excess of $75,000 in damages. (Filing No. 140, ¶ 1). As stated above, Shangli is a business entity located within China; Shiu Fung is a company with its principal place of business in Kowloon, Hong Kong; and the Winco Defendants are related entities and have a principal place of business in Prairie Village, Kansas. The Plaintiffs filed their Second Amended Complaint with this Court.

It is always the duty of a federal court to examine its own jurisdiction over a matter, and address any subject matter jurisdiction defect that might arise. *See, e.g.*, *Wis. Dept. of Corr. v. Schacht*, 524 U.S. 381, 382 (1998) ("No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own."). Although no party currently

8

contests this Court's jurisdiction, I have conducted an independent review and find that this Court does have diversity jurisdiction under 28 U.S.C. § 1332(a).

### Standard of Review

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not

significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## Discussion

Winco and Shiu Fung, in their joint brief in support (Filing No. 205) and joint brief in reply (Filing No. 263), argue that, as to all causes of action filed against them, their joint motion for summary judgment should be granted and all claims against them dismissed. Similarly, Shangli, in its brief in support (Filing No. 214) and brief in reply (Filing No. 264), argues that its motion for summary judgment should be granted and all claims against it should be dismissed. The arguments of the respective Defendants are addressed below.

## A. Winco and Shiu Fung

### 1. First Cause of Action—Strict Liability

The Defendants Winco and Shiu Fung argue that they are not manufacturers of Saturn Missile products (Filing No. 205, pp. 8,10 ¶¶ 23, 26), and consequently cannot be held strictly liable under Nebraska's product liability laws. *See* Neb. Rev. Stat. § 25-21, 181 ("No product liability action based on the doctrine of strict liability in tort shall be commenced or maintained against any seller or lessor of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user, or consumer unless the seller or lessor is also the manufacturer of the product or the part

thereof claimed to be defective."). The Plaintiffs, however, dispute Winco and Shiu Fung's self-characterization as non-manufacturers of Saturn Missile products, and state that "Winco and Shiu Fung, through the AFSL, designed, tested, and dictated the standards for the manufacture of fireworks products including Saturn Missiles." (Filing No. 246, app. 1 ¶¶ 23, 26).[6] The Plaintiffs present two arguments why both Winco and Shiu Fung should be considered manufacturers with regard to the Nebraska statute.

    *a. Stanford Analysis*

First, the Plaintiffs argue that Winco and Shiu Fung should be treated as manufacturers pursuant to case law from this district. The Plaintiffs cite *Stanford v. Ektelon/Prince Sports Group, Inc.*, 1999 WL 33537914, *1–*8 (D. Neb. Nov. 5, 1999), a case in which the court denied a motion for summary judgment despite the defendant's insistence that it was not a manufacturer. In support of its ruling, the *Stanford* court noted that "[the plaintiff] contends that the defendants jointly tested, manufactured, labeled and distributed the [allegedly defective product] worn by [the plaintiff]. This testimony creates a material fact to be decided at trial. If, however, the evidence at trial does not support [the plaintiff's] allegations in this regard, the defendants might very well be entitled to a dismissal on the strict liability claim . . . ." *Id.* at *3.

However, as Winco and Shiu Fung point out, in the case at hand the Plaintiffs have only offered evidence to demonstrate that Winco and Shiu Fung help establish voluntary testing standards, to which they subject the fireworks they distribute. There is no evidence

---

[6]There is no allegation by the Plaintiffs that the Product was made in a factory owned by Winco or Shiu Fung. Rather, the Plaintiffs contend that "Shiu Fung sold the product to Winco," (Filing No. 246, p. 9 ¶ 22), and that "Shiu Fung obtained the Product from Shangli Jin Xin," (Filing No. 246, p. 9).

offered by the Plaintiffs that either Winco or Shiu Fung assist in, or even assert an influence over, the construction, assembling, packaging, or labeling of any fireworks. Rather, the Plaintiffs aver that Winco and Shiu Fung are members of the AFSL, (Filing No. 246, p. 12 ¶ 50), and that the AFSL, "through its members, dictates the exact specifications for fireworks that AFSL members may purchase and accept." (Filing No. 246, p. 12 ¶ 52). This case is unlike *Stanford*, where there was an allegation that the defendants jointly manufactured the product in question. In this case, there is only an allegation that Winco and Shiu Fung helped develop the standards to which they subject their own fireworks. This does not raise either Winco or Shiu Fung to the status of manufacturer of the Product.[7] Accordingly, I find Winco and Shiu Fung are not manufacturers pursuant to the reasoning used in *Sanford.*

    *b. Apparent Manufacturer Doctrine*

    The Plaintiffs also argue that Winco and Shiu Fung should be found to be manufacturers under the apparent manufacturer doctrine. For the general concept, the Plaintiffs cite to the Restatement (Second) of Torts, which states that "[o]ne who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were a manufacturer." Restatement (Second) of Torts § 400, at 338. "In its essence, this doctrine simply allows a fact finder to transfer the liability of a manufacturer

---

    [7]The Plaintiffs also state that Winco and Shiu Fung pay a surcharge for AFSL testing, and that both this surcharge and test results are passed along to their customers. (Filing No. 246, p. 13 ¶¶ 55–56). However—even considering that both monetary costs and test results are passed along to their customers—absent an allegation with supporting evidence that Winco or Shiu Fung took raw materials and transformed them into the Saturn Missile, *Stanford* is inapplicable.

12

to a separate entity holding itself out as the manufacturer." *Stones v. Sears, Roebuck & Co.*, 558 N.W.2d 540, 544 (Neb. 1997).

The Nebraska Supreme Court recently dealt with the apparent manufacturer doctrine in *Stones.* In that case, the plaintiffs brought suit against Sears for an allegedly defective gas grill. The plaintiffs admitted that the grill was actually manufactured by Kenmore, and not Sears, but argued that the apparent manufacturer doctrine should be adopted in Nebraska, and that Sears should be held to the liability of a manufacturer. The court noted that the plaintiffs made much of the fact that "Sears sold a customer maintenance agreement plan along with the grill. The fact that this plan closely resembles a warranty does not convince us that it causes the public to believe that Sears manufactured the grill." *Id.* at 545. The court eventually concluded that,

> Even if this court were inclined to adopt the doctrine, we decline to do so in the instant case because there is no evidence in the record that the Stoneses believed Sears was the manufacturer or that Sears held itself out as the manufacturer of the grill in question. In this regard, we note that there is no evidence in the record that the name "Sears" was on the grill. In fact, the assembly instructions for the grill explicitly referred to it as a "Kenmore" outdoor gas grill. While "Kenmore" may be commonly associated with Sears, there is no evidence supporting that contention in the record before us.

*Id.* The court did not adopt the doctrine, and the issue remains undecided in Nebraska.

The Plaintiffs argue that although the doctrine is not yet adopted in Nebraska, the case at hand contains the appropriate facts, and this Court should apply the doctrine. They state that Winco and Shiu Fung: (I) sold, distributed, and supplied fireworks, including the Product; (ii) charged a testing fee and provided test results; and (iii) helped develop the labeling, manufacturing, and testing standards which the AFSL used to determine acceptable fireworks. The Plaintiffs argue that all of these factors resulted in an illusion

13

that the products Winco and Shiu Fung were selling were their own, an illusion upon which customers relied to help assure the quality of the products they were buying.

However, even if I were inclined to find that the Nebraska Supreme Court would adopt the apparent manufacturer doctrine under the appropriate circumstances, the case at hand does not exhibit the necessary facts to do so. Similar to *Stones*, there is no evidence in the record that the Winco or Shiu Fung name appeared on the disputed firework. Further, there is no evidence that the Plaintiffs believed or relied upon any brand name, apparent or not, in choosing the fireworks.

I find that neither Winco nor Shiu Fung are manufacturers, and under Neb. Rev. Stat. § 25-21, 181, cannot be held strictly liable in the current action. Accordingly, pursuant to Nebraska law, I will dismiss the first cause of action (strict liability) as it is pled against the Defendants Winco and Shiu Fung.

### 2. Second through Seventh Causes of Action—Preemption

Winco and Shiu Fung claim that the negligence and warranty causes of action (causes of action two through seven), are "label-based claims specifically pertaining to Plaintiffs' assertion that the [firework's] label should have included additional warning language related to the [firework's] possible errant flight pattern (and/or possible eye injury)" (Filing No. 263, p. 11), and are preempted by federal law. The Plaintiffs, conversely, argue that the federal preemption provision found in the applicable federal regulations applies only to claims based on labeling or packaging (and consequently only pertains to cause of action three—negligent failure to warn).[8] Plaintiffs argue that the other

---

[8]The Plaintiffs also contend that, "to the extent any of Plaintiffs' warranty claims are premised upon the language of the warning label," (Filing No. 296, p. 7 n.2), those claims are not

state law causes of action, which do not require manufacturers to label or package their products in any particular way, are not preempted by federal regulations. Further, the Plaintiffs state that the third cause of action is also not completely preempted, arguing that they "may maintain their failure to warn claim so long as the [firework's] warning/labeling did not comply with the warning/labeling requirements of the [federal regulations]." (Filing No. 296, p. 7).

*a. Failure to Warn*

Winco and Shiu Fung argue that the more general labeling requirements pursuant to 15 U.S.C. § 1261(p)(1)[9] do not apply to the Product. Rather, they argue that the

_____

preempted pursuant to the same reasoning the negligent failure to warn claim is not preempted, namely, noncompliance with the applicable federal regulations.

[9] 15 U.S.C. § 1261(p)(1) sets out the following requirements.

The term 'misbranded hazardous substance' means a hazardous substance . . . intended, or packaged in a form suitable, for use in the household or by children, if the packaging or labeling of such substance . . . if such substance, except as otherwise provided by or pursuant to section 1262 of this title, fails to bear a label--

(1) which states conspicuously (A) the name and place of business of the manufacturer, packer, distributor or seller; (B) the common or usual name or the chemical name (if there be no common or usual name) of the hazardous substance or of each component which contributes substantially to its hazard, unless the Commission by regulation permits or requires the use of a recognized generic name; (C) the signal word "DANGER" on substances which are extremely flammable, corrosive, or highly toxic; (D) the signal word "WARNING" or "CAUTION" on all other hazardous substances; (E) an affirmative statement of the principal hazard or hazards, such as "Flammable", "Combustible", "Vapor Harmful", "Causes Burns", "Absorbed Through Skin", or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided, except when modified by regulation of the Commission pursuant to section 1262 of this title; (G) instruction, when necessary or appropriate, for first-aid treatment; (H) the word "poison" for any hazardous substance which is defined as "highly toxic" by subsection (h) of this section; (I) instructions for handling and storage of packages which require special care in handling or storage; and (J) the

15

regulations provide for more specific requirements for certain types of fireworks, including

the type of firework at issue in this litigation, referring to 16 C.F.R. § 1500.14.[10]  In effect,

---

statement (I) "Keep out of the reach of children" or its practical equivalent, or, (ii) if the article is intended for use by children and is not a banned hazardous substance, adequate directions for the protection of children from the hazard.

15 U.S.C. § 1261(p)(1).

[10]The relevant portions of 16 C.F.R. § 1500.14 read as follows:

The Commission finds that the following substances present special hazards and that, for these substances, the labeling required by [15 U.S.C. § 1261(p)(1)] is not adequate for the protection of the public health.  Under [15 U.S.C. § 1262(b)], the following specific label statements are deemed necessary to *supplement* the labeling required by [15 U.S.C. § 1261(p)(1)]. . . . .
(7) Fireworks devices.  Because of the special hazards presented by fireworks devices if not used in a certain manner, the following listed fireworks devices shall be labeled as indicated:
. . . .
(xiv) Missile-type rockets.

WARNING (OR CAUTION) FLAMMABLE (OR EMITS SHOWERS OF SPARKS, IF MORE DESCRIPTIVE)

Use only under [close] adult supervision.  (Use of the word close is optional.)
For outdoor use only.
Place on hard, open surface.
Light fuse and get away.

(xv) Labeling—General.  Any fireworks device not required to have a specific label as indicated above shall carry a warning label indicating to the user where and how the item is to be used and necessary safety precautions to be observed.  All labels required under this section shall comply with the requirements of § 1500.121 of these regulations.

16 C.F.R. § 1500.14(b), (7), (xiv)–(xv) (emphasis added).  16 C.F.R. § 1500 is promulgated pursuant to 15 U.S.C. § 1262, which states that "[i]f the Commission finds that the requirements of section 1261(p)(1) of this title are not adequate for the protection of the public health and safety in view of the special hazard presented by any particular hazardous substance, it may by regulation establish such *reasonable variations* or *additional* label requirements as it finds necessary for the protection of the public health and safety."  15 U.S.C. § 1262(b) (emphasis added).  16 C.F.R. § 1500.121 "contains the Commission's interpretations and policies for the type size and placement of cautionary material on the labels of hazardous substances and contains other criteria for such cautionary statements that are acceptable to the Commission as satisfying section 2(p)(2) of the

Winco and Shiu Fung argue that the specific labeling requirements *supersede* the more general labeling requirements.  Further, they assert that the Product complied with the specific labeling requirements, and therefore the Product has met the federally mandated labeling requirement, and state law that may require anything more is preempted.  The Plaintiffs, on the other hand, argue that the general requirements are not replaced, but rather the specific requirements are *in addition to* that which is already generally required.  Further, the Plaintiffs assert that the Product's label does not satisfy either the general requirements (notably, the requirement of an affirmative statement of the principal hazards), or the specific requirements (due to additional language that confuses and, consequently, negates that which is specifically required).

Although case law on the subject is sparse, applying general rules of statutory construction, I conclude that 15 U.S.C. § 1262(b) allows for the promulgation of regulations that either add to *or* replace the requirements stated in 15 U.S.C. § 1261(p)(1).  In this case, 16 C.F.R. § 1500.14 clearly states that "the following specific label statements are deemed necessary to *supplement* the labeling required by [15 U.S.C. § 1261(p)(1)]."  16 C.F.R. § 1500.14 (emphasis added).  "Supplement" has the general meaning of "adding to," which is consistent with the language of 15 U.S.C. § 1262(b).  Therefore I find that the Product was subject to both the specific requirements under 16 C.F.R. § 1500.14(b)(7)(xiv), and the general requirements under 15 U.S.C. § 1261(p)(1).

The evidence before the Court indicates that the warning on the Product consisted of the following:

---

Act."  16 C.F.R. § 1500.121(a)(1).

> WAR NING.  Flammable missle with report.  Use only under close
> adult supervision.  For outdoor use only, place on hard, open surface.
> Do not hold in hand.  Light fuse and get away.  This missile travels at
> high speed and can travel long distances. Misuse may result in injury
> or fire.

(Filing No. 296, p. 11; Exs. 12(M), 12(B)).  As to the specific requirements of 16 C.F.R. §
1500.14(b)(7)(xiv), the Plaintiffs argue that the additional language, particularly "Misuse
may result in injury or fire," changed the nature of the warning such that it no longer met
what was required under 16 C.F.R. § 1500.14(b)(7)(xiv).  In this regard, the Plaintiffs argue
that "[a] representation that 'misuse may result in injury or fire' is the equivalent of
warranting that 'proper use' (i.e., place on hard, open surface, light fuse, and get away) will
not result in injury or fire."  (Filing No. 296, p. 12).  However, I am not persuaded by the
Plaintiffs' argument on this point.  The federal regulation required that specific language
be included, and that language was included.  The requirements found in 16 C.F.R. §
1500.14(b)(7)(xiv) have been met.

As to the general requirements of 15 U.S.C. § 1261(p)(1), for purposes of this
motion, there remain issues of material facts.  It is the law of the Eighth Circuit that a
plaintiff can maintain a state-law tort action "when defendants fail to comply with the federal
requirements."  *Mattis v. Carlon Elec. Prods.*, 295 F.3d 856, 862 (8th Cir. 2002).  In other
words, as long as the Plaintiffs in this case are not attempting to impose warning
requirements that are *different from or in addition to* federal standards, they may maintain
their failure to warn claim.  The federal standards found in 15 U.S.C. § 1261(p)(1) require,
among others, "an affirmative statement of the principal hazard or hazards, such as
'Flammable,' 'Combustible,' 'Vapor Harmful,' 'Causes Burns,' 'Absorbed Through Skin,' or
similar wording descriptive of the hazard."  15 U.S.C. § 1261(p)(1)(E).  The Plaintiffs may

18

seek to prosecute their state-law failure to warn tort claim according to state standards that are identical to the federal standards. Although the Plaintiffs cannot argue that the cautionary warning label should have included more than that which is required by the federal standards, nonetheless, questions of material fact remain.

    *b. Causes of Action Other than Failure to Warn*

    In *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), the Supreme Court examined the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.* Specifically, the Court examined FIFRA's preemption language, which states "[s]uch State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b).[11] The Court found:

> That § 136v(b) may pre-empt judge-made rules, as well as statutes and regulations, says nothing about the scope of that pre-emption. For a particular state rule to be pre-empted, it must satisfy two conditions. First, it must be a requirement "for labeling or packaging;" rules governing the design of a product, for example, are not pre-empted. Second, it must impose a labeling or packaging requirement that is "in addition to or different from those required under this subchapter." A state regulation requiring the word "poison" to appear in red letters, for instance, would not be pre-empted if an EPA regulation imposed the same requirement.
>
> It is perfectly clear that many of the common-law rules upon which petitioners rely do not satisfy the first condition. Rules that

---

[11]This language is very similar to that found in 15 U.S.C. § 1261, note (b)(1)(A), which states "if a hazardous substance or its packaging is subject to a cautionary labeling requirement under [15 U.S.C. § 1261(p)] or [15 U.S.C. § 1262(b)] designed to protect against a risk of illness or injury associated with the substance, no State or political subdivision of a State may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under [15 U.S.C. § 1261(p)] or [15 U.S.C. § 1262(b)]."

> require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for "labeling or packaging." None of these common-law rules requires that manufacturers label or package their products in any particular way. Thus, petitioners' claims for defective design, defective manufacture, negligent testing, and breach of express warranty are not pre-empted.

*Bates*, 544 U.S. at 443–44.

Winco and Shiu Fung argue that in the case at hand, the Plaintiffs' causes of action two through seven are "label-based" claims, claims that "hinge on what Plaintiffs claim to be inadequate warning language on the Product's label," (Filing No. 263, p. 13), and therefore *Bates* is distinguishable. I find Winco and Shiu Fung's characterization to be over-broad. Although the third cause of action (negligent failure to warn, which is discussed above) does relate to labeling or packaging, the second (negligent failure to use reasonable care to see that goods are safe for intended use), fourth (breach of implied warranty for a particular purpose), fifth (breach of implied warranty of merchantability), and seventh (breach of express warranty) causes of action do not satisfy the first prong of the *Bates* test. Consequently, pursuant to the Supreme Court decision in *Bates*, I find that these causes of action are not preempted.

### *3. Second Cause of Action—Negligent Failure to Use Reasonable Care to Ensure that Goods are Safe for Intended Use*[12]

---

[12]Nebraska law notes a significant difference between actions based on negligence and actions based in strict liability. "In a cause of action based on negligence, the question involves the [defendant's] conduct, that is, whether the [defendant's] conduct was reasonable in view of the foreseeable risk of injury; whereas in a cause of action based on strict liability in tort, the question involves the quality of the product, that is, whether the product was unreasonably dangerous." *Freeman v. Hoffman-La Roche, Inc.*, 618 N.W.2d 827, 833 (Neb. 2000).

Winco and Shiu Fung argue that the second cause of action, negligent failure to use reasonable care to ensure that the Product was safe for intended use, should be dismissed as it applies to them.  For this causes of action, Winco and Shiu Fung argue that they did not breach any duty owed to the Plaintiffs, because of the "state of the art" at the time the Product was produced, and because any defect that existed in the Product was a latent defect for which Winco and Shui Fung are not liable.[13]

a. "State of the Art"

As an initial matter, Winco and Shiu Fung acknowledge in their brief in reply that, although so labeled in their brief in support, reference to the state of the art defense "was confusing," because they were not attempting to rely on such a defense.  (Filing No. 263, p. 17).  Rather, Winco and Shiu Fung state that they were simply "relying on and discussing the 'then existing standards of the industry' for saturn missiles, or 'the customary way' of providing for the quality and safety of saturn missiles and similar products."  (Filing No. 263, p. 17).  In this regard, Winco and Shiu Fung ask this Court, for purposes of these summary judgment proceedings, to view compliance with the AFSL and the CPSC as the standard of conduct of a reasonable person, and consequently evidence of compliance with such standards satisfies their duty of care.

However, as was noted in *Hancock v. Paccar, Inc.*, 283 N.W.2d 25 (Neb. 1979), "[t]he question [] is not whether anyone else was doing more, although that may be considered, but whether the evidence disclosed that anything more could reasonably and economically be done."  *Id.* at 35 (citations omitted).  In that case, the plaintiff presented

---

[13]Winco and Shiu Fung make similar arguments for their third cause of action, failure to warn.  However, pursuant to my analysis above, I will not further discuss the third cause of action.

evidence that there were alternative design methods which could have been employed and which, if used, may have prevented the extent of the plaintiff's injury.  "The jury was not required to accept any of those suggestions. Nevertheless, those were questions of fact which the jury had to resolve."  *Id.*

Although Winco and Shiu Fung ask this Court to adopt the standards promulgated by AFSL and the CPSC as the standards by which a reasonable person would act, the Plaintiffs have presented evidence that the AFSL sets voluntary standards (Ex. 7, Apel Depo. at 51:11 to 52:1, 90:20–22).  Further, although the Plaintiffs have presented evidence that standards provided by the CPSC set the minimum standards for the AFSL, and not a binding minimum standard (Ex. 6, Collar Depo. at 56:3–15), it appears that the *performance standards* set the by CPSC are, in fact, minimum legal standards.  *See Shelton v. Consumer Prods. Safety Comm'n*, 277 F.3d 998, 1006–07 (8th Cir. 2002) ("[N]either the FHSA nor the fireworks regulations completely ban common fireworks; they ban only common fireworks that violate certain performance standards, as the [appellants'] fireworks did in this case.  When all of the [appellants'] nineteen tested products failed the *minimum performance standards* set forth by the regulations, the CPSC determined that the fireworks in question could not be made safe for use in the household by the general public regardless of whether the products had cautionary labeling." (emphasis added)). As was found by the court in *Meisner v. Patton Elec. Co., Inc.*, 781 F. Supp. 1432 (D. Neb. 1990), proof of compliance with, or even actions exceeding, a regulation that sets "voluntary standards, and more importantly, minimum standards . . . is not necessarily proof of 'the best technology reasonably available at the time' or proof as to what warnings

22

the rest of the space heater industry was using at the time, if any at all." *Id.* at 1443–44. The *Meisner* court further noted that the Nebraska Supreme Court in *Hancock* stated that "'[w]hile the jury may consider, as evidence of the state of the art, the fact that no manufacturer is doing that which is claimed could be done, such evidence will not establish conclusively that state of the art. Obviously, the inaction of all the manufacturers in an area should not be the standard by which the state of the art should be determined.'" *Id.* at 1444 (quoting *Hancock*, 283 N.W.2d at 35).  Even if I found that the Defendants were in complete compliance with the standards set forth by the AFSL and the CPSC, under Nebraska law, this would only be evidence of satisfying the standard of care, leaving for a jury genuine issues of material fact.

   *b. Latent Defect*

   Winco and Shiu Fung argue that any evidence of any defect pertains to a latent defect, and, as distributors, they had no duty to inspect for possible inherent defects. Further, they argue that there is no duty for a distributor to inspect if the product has received approval from the appropriate inspector (in this case the CPSC and the AFSL). Finally, they argue that a distributor is not liable when a product is shipped directly from the manufacturer to the buyer in a closed carton, the way the Product was shipped to Hale.

   The Plaintiffs, on the other hand, argue that there is evidence that the Product was defective because it did not have a guide rod or other guidance system (which they argue is not a hidden defect), and was known in the industry to fly erratically.  Further, the Plaintiffs argue that, to the extent any hidden defects existed, Winco and Shiu Fung had a duty to inspect the Product to discover any possible defect.

23

As noted above, there is a difference between a product liability action based in negligence and a product liability action based in strict liability.  For an action based in negligence, the issue is not whether the product was unreasonably dangerous, but rather whether the defendant (manufacturer, supplier, seller, or distributer) used reasonable care to see that the product it manufactured, supplied, sold, or distributed was safe for the use for which it was made.  *See* NJI Civ. 11.10.  The Plaintiffs have presented sufficient evidence with regard to Winco and Shiu Fung's possible breach of this duty to use reasonable care to withstand summary judgment on the Plaintiffs' second cause of action.

### 4. Fourth, Fifth, and Seventh Causes of Action—Breach of Warranty

The Plaintiffs, for their fourth, fifth, and seventh causes of action, assert that the Defendants breached (I) an implied warranty of fitness for a particular purpose, (ii) an implied warranty of merchantability, and (iii) an express warranty.[14]

#### a. Implied Warrant of Fitness for a Particular Purpose

In order to recover for breach of an implied warranty of fitness for a particular purpose in Nebraska, the Nebraska Supreme Court has held that certain conditions must be present:[15]  "(1) The seller must have reason to know of the buyer's particular purpose; (2) The seller must have reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods; and (3) The buyer must, in fact, rely upon the seller's skill or judgment."  *Delgado v. Inryco, Inc.*, 433 N.W.2d 179, 184 (Neb. 1988).

---

[14]It is noted that while Winco and Shiu Fung argue in their brief in support that they did not receive requisite notice of possible breach of warranty claims, Winco abandons that argument in the brief in reply.  (Filing No. 263, p. 19).

[15]These conditions are not required in an action for the implied warranty of merchantability. *Delgado v. Inryco, Inc.*, 433 N.W.2d 179, 184 (Neb. 1988).

"Ordinarily, whether or not the implied warranty of fitness for a particular purpose arises in any individual case is a question of fact to be determined by the circumstances of the contracting between the parties." *Outlook Windows P'ship v. York Intern. Corp.*, 112 F. Supp. 2d 877, 899 (D. Neb. 2000) (citing *El Fredo Pizza, Inc. v. Roto-Flex Oven Co.*, 261 N.W.2d 358, 362–63 (Neb. 1978)).

The line between "ordinary purpose" and "particular purpose" has been somewhat blurred in Nebraska. *See Mennonite Deaconess Home and Hosp., Inc. v. Gates Eng'g, Co.*, 363 N.W.2d 155 (Neb. 1985). In that case, the plaintiff hospital had a roof that leaked, and examined several options for repairing or replacing its roof before it chose the defendant's product. "The defendant's representative assured the hospital that the Gates one-ply roofing system would handle the problem. It, of course, did not. The Nebraska Supreme Court held that the evidence in the case would support a breach of either an implied warranty of merchantability under U.C.C. § 2-314 or an implied warranty of fitness for a particular purpose under U.C.C. § 2-315, or a breach of both sections."[16] *Outlook Windows P'ship*, 112 F. Supp. 2d at 899.

However, Nebraska law has not completely merged the concept of "ordinary purpose" and "particular purpose." *See* Neb. Rev. Stat. U.C.C. § 2-315 cmt. ("A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his or her business whereas

---

[16]*See* Barkley Clark and Christopher Smith, 1 The Law of Prod. Warranties § 6:5 (updated April 2006) ("[T]he Nebraska Supreme Court held that both implied warranties existed and were breached. Since the defendant failed to provide the plaintiff with a one-ply system roof that would not leak when installed, the goods were not fit for their ordinary purpose; the deviation from the standard of merchantability led to violation of § 2-314.").

the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains."). Although both theories of recovery may be based in the same contract, I find that in this case, there is no evidence of a particular purpose that is different from the Product's ordinary purpose. Consequently, the Plaintiffs do not have a fitness for a particular purpose claim, and cause of action four (breach of implied warranty for a particular purpose) will be dismissed as asserted against Winco and Shiu Fung.

### b. Implied Warranty of Merchantability

The Plaintiffs' Second Amended Complaint includes a claim for breach of an implied warranty of merchantability. In order to recover damages for breach of an implied warranty of merchantability, the Nebraska Supreme Court has held that "there must be proof that there was a deviation from the standard of merchantability at the time of sale and that such deviation caused the plaintiff's injury both proximately and in fact. Thus, a breach of the warranty has been found to exist where the item sold failed to perform adequately because of a lack of quality inherent within the item itself. In proving a deviation from the standard of merchantability, some proof of noncompliance with the warranty must be presented." *Delgado*, 433 N.W.2d at 183–84 (citing *O'Keefe Elevator v. Second Ave. Props.*, 343 N.W.2d 54, 56–57 (1984)).

Winco and Shiu Fung, however, argue that Nebraska law has merged the breach of an implied warranty of merchantability and strict product liability causes of action, and therefore this Court should not separately analyze the Plaintiffs' implied warranty of

26

merchantability claim.  "[We have] noted the developing trend in products liability law of merging contract theory of breach of implied warranty with tort theories based upon defects in design and manufacturing and failure to warn.  We [have] found the underlying reasoning of this trend to be persuasive and therefore [have] considered allegations of breach of implied warranty as falling under the accompanying allegations of design and manufacturing defect."  *Stahlecker v. Ford Motor Co.*, 667 N.W.2d 244, 252 (Neb. 2003) (citing  *Freeman v. Hoffman-La Roche, Inc.*, 618 N.W.2d 827 (Neb. 2000)).

However, the Nebraska Supreme Court in *Freeman* noted that the theories of recovery were merged because "[t]o allow two or more factually identical risk-utility claims to go to a jury under different labels, whether 'strict liability,' 'negligence,' or 'implied warranty of merchantability,' would generate confusion and may well result in inconsistent verdicts."  *Freeman*, 618 N.W.2d at 843.  Consequently, although under Nebraska law this Court could not allow both a strict liability and an implied warranty of merchantability claim to proceed to trial (because they would merge), because the strict liability claim will be dismissed as to Winco and Shiu Fung, there is no reason to apply the merger doctrine.  Accordingly, the Plaintiffs may maintain their claim based on breach of implied warranty of merchantability.

*c. Express Warranty*

The Plaintiffs, in their Second Amended Complaint, assert a cause of action based on breach of an express warranty, averring that the "Defendants expressly warranted that the Rocket, when used outdoors, placed on a hard open surface and the fuse was ignited would travel vertically upwards and away from individuals in the immediate area." (Filing No. 140, p. 8 ¶ 43).  Winco and Shiu Fung, in their brief in support of their motion for

27

summary judgment, argue that there was never any express warranty given, and consequently the Plaintiffs' claim based on an express warranty must fail.

Under the Nebraska U.C.C., an express warranty is created by a seller through:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Neb. Rev. Stat. U.C.C. § 2-313.  In this case, the Plaintiffs argue that the label on the Product—specifically, the words "Misuse may result in injury or fire"—creates an express warranty that if all of the instructions on the Product's label are followed, injury will not result.  Although well taken, I do not believe that there was an express warranty made as contemplated by Nebraska law[17] because I do not find that "misuse may result in injury" is an express affirmation that "proper use will not result in injury."  In other words, there was no affirmative statement made to serve as the basis for an express warranty claim.  Consequently, the seventh cause of action, based on breach of an express warranty, will be dismissed as to Winco and Shiu Fung.

---

[17] *See Peterson v. N. Am. Plant Breeders*, 354 N.W.2d 625, 630 (Neb. 1984) ("The existence of an express warranty depends upon the particular circumstances in which the language is used and read. . . .  A catalog description or advertisement may create an express warranty in appropriate circumstances. . . .  *The trier of fact must determine whether the circumstances necessary to create an express warranty are present in a given case. . . .  The test is 'whether the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing as to which they may each be expected to have an opinion and exercise a judgment.'*") (citation omitted) (emphasis in original).  In the case at hand, there is no affirmative statement for a trier of fact to examine.

### 5. Eighth Cause of Action—Loss of Consortium

Shiu Fung and Winco argue that, if summary judgment is granted in favor of Winco and Shiu Fung for Mrs. Sherman's injuries, Mr. Sherman's loss of consortium cause of action should also be dismissed. However, since I find that genuine issues of material fact exist as to Winco and Shiu Fung's liability with regard to Mrs. Sherman, I will not grant summary judgment in Winco and Shiu Fung's favor for the loss of consortium cause of action.

### 6. Ninth Cause of Action—Punitive Damages

Punitive damages are not allowed under Nebraska law, and consequently I will grant summary judgment in favor of all Defendants as to the ninth cause of action. *See Enron Corp. v. Lawyers Title Ins. Corp.*, 940 F.2d 307, 313 (8th Cir. 1991) ("[P]unitive, vindictive, or exemplary damages contravene Neb. Const. Art VII, § 5, and thus are not allowed in this jurisdiction.") (citing *Distinctive Printing & Packaging Co. v. Cox*, 443 N.W.2d 566, 574 (Neb. 1989)).

## B. Shangli Export Fireworks Factory

Shangli, in its brief in support of its motion for summary judgment (Filing No. 214), challenges the reliability and admissibility of the Plaintiffs' evidence (notably, the affidavit of Cara LaForge), and argues that there are no genuine issues of material fact regarding whether Shangli was the manufacturer of the Product that injured Mrs. Sherman.

As noted above, I will not consider the affidavit of Cara LaForge. Consequently, even after considering the evidence of the similarities of the Product's twin (the firework purchased at the same time as the Product), to the fireworks displayed for sale by China

29

Sunsong (*see* Filing No. 246, pp. 30–31), I find that the Plaintiffs have not met their burden of creating a prima facie case against Shangli.  In other words, I find that there is not sufficient evidence to create a genuine issue of material fact regarding Shangli's possible involvement in the manufacturing of the Product.

IT IS ORDERED:

1.     Defendants Winco Fireworks, Inc., Winco Fireworks International, LLC,  and Shiu Fung Fireworks Co. Ltd.'s Joint Motion for Summary Judgment (Filing No. 204), is granted in part and denied in part;

2.     Defendant  Shangli Jin Xin Export Fireworks Factory's Motion for Summary Judgment (Filing No. 223), is granted;

3.     Defendants Winco Fireworks, Inc., Winco Fireworks International, LLC,  and Shiu Fung Fireworks Co. Ltd.'s Objection to Index (Filing No. 267), is granted in part and denied in part consistent with this Memorandum and Order;

4.     Defendant Shangli Jin Xin Export Fireworks Factory's Objection to Index (Filing No. 268), is granted;

5.     Plaintiffs Margaret and Richard Sherman's Motion to Strike Affidavits of Michael Collar and Ralph Apel (Filing No. 269), is denied;

6.     Plaintiffs'  Motion for Extension of Time to File Application for Attorneys Fees and Costs (Filing No. 298), is granted;

7.     Consistent with this Memorandum and Order,

a.     causes of action one (based on strict liability), four (based on breach of an implied warranty for a particular purpose), six (based on the Magnuson Moss Act), seven (based on breach of an express warranty), and nine (based on punitive damages) of the Plaintiffs' Second Amended Complaint (Filing No. 140) are dismissed as to the Defendants Winco Fireworks,

Inc., Winco Fireworks International, LLC, and Shiu Fung Fireworks Co. Ltd.'s;

b. all causes of action of the Plaintiffs' Second Amended Complaint (Filing No. 140) are dismissed as to the Defendant Shangli Jin Xin Export Fireworks Factory; and

c. the Plaintiffs' motion for application for attorneys fees and costs shall be filed on or before March 5, 2007; and

8. On the Court's own motion, the Order Re: Trial Preparation (Filing No. 277) shall be amended such that

a. trial briefs are due two working days before trial. In other words, trial briefs are due on or before Friday, March 9, 2007; and

b. as to those trial witnesses whom the parties are reasonably certain will testify in person and not by deposition, counsel's duty to designate deposition testimony, make cross-designations, and identify objections, as contained in the Order Re: Trial Preparation (Filing No. 277) at paragraph 4.A, is suspended. In the event the parties learn that testimony will be offered through deposition, then the designations shall be made in accordance with the Order Re: Trial Preparation by Friday, March 9, 2007, or at the earliest practicable time thereafter.

DATED this 28th day of February, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge